IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROOSEVELT WATKINS, *et al.*,       )
                                   )
          Plaintiffs,              )
                                   )
v.                                 )          CASE NO.  2:11-cv-158-MEF
                                   )
CITY OF MONTGOMERY,                )              (WO – Publish)
                                   )
          Defendant.               )

## MEMORANDUM OPINION AND ORDER

Roosevelt Watkins ("Watkins"), a Lieutenant in the Division of Fire Suppression ("Suppression Division") of the Montgomery Fire Department ("MFD"), brings this collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 207(a) (hereinafter "FLSA" or the "Act"), against his employer, the City of Montgomery (the "City"), seeking overtime compensation to which he claims he is entitled.  Specifically, Watkins contends that he is entitled to overtime compensation as a non-exempt "first responder," pursuant to the Department of Labor's ("DOL") "first responder" regulation, 29 C.F.R. § 541.3(b).  This cause is now before the Court on the Motion for Summary Judgment (Doc. #65) filed by the City on October 25, 2012.  For the reasons set forth in this Memorandum Opinion and Order, the motion is due to be DENIED.

### I. PROCEDURAL BACKGROUND

On March 7, 2011, Watkins filed suit against the City of Montgomery, alleging that, at all times relevant to this action, the City employed him as a Fire Suppression Lieutenant

with the MFD Suppression Division.  He further alleges that the City failed to pay him mandatory overtime compensation for each hour he worked in excess of 106 hours in a fourteen-day pay period, as required by the FLSA.  *See* 29 U.S.C. § 207(k).  The City asserts affirmative defenses under the executive and administrative exemptions to the FLSA's overtime requirements.  *See* 29 U.S.C. § 213(a)(1).

On July 14, 2011, Watkins moved to have this matter conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).  (Doc. #47.)  Over the City's objection, the Court conditionally certified this matter as a collective action (*see* Order, Doc. #51),[1] and several other MFD Fire Suppression Lieutenants have since joined this lawsuit.[2]

In its Motion for Summary Judgment, the City argues that it is entitled to judgment as a matter of law because Plaintiffs fall within the executive and administrative exemptions to the FLSA overtime pay requirements.  Having carefully considered the submissions in support of and in opposition to the City's motion, as well as the applicable law and the record as a whole, the Court disagrees, and the motion is due to be DENIED.

## II. JURISDICTION AND VENUE

Jurisdiction over the claims in this action is proper under 28 U.S.C. § 1331 (federal

---

[1]  Although the Court conditionally certified as a class all Fire Suppression Lieutenants who worked for the City dating back to February 22, 2005, at that time the Court refused to express an opinion on the merits of the City's argument that the three-year statute of limitations under the FLSA should preclude recovery for any claims arising before March 8, 2008, finding that issue more appropriately suited for the summary judgment stage of the proceedings.  (Doc. #51, at 4–5.)

[2]  The Court will refer in this opinion to the claims and contentions of all plaintiffs collectively and will refer to those individuals as "Plaintiffs."

question) and 29 U.S.C. § 216(b), the collective action provision of the FLSA.  The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

### III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322–23.

Entitlement to an overtime exemption under the FLSA is an affirmative defense upon which a defendant bears the burden of proof.  *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008).   A defendant may prevail on a motion for summary on an affirmative defense, such as an entitlement to an exemption under the FLSA, when it has produced "credible evidence . . . that would entitle it to a directed verdict if not controverted

at trial." *See Celotex*, 477 U.S. at 331. The Supreme Court has established that an exemption from coverage under the FLSA must be narrowly construed. *Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945); *see also Morgan*, 551 F.3d at 1269. The overtime exemptions under the FLSA are to be applied only to those employees who are "plainly and unmistakably" within the terms and spirit of the Act. *Phillips*, 324 U.S. at 493.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotations omitted). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## IV. FACTS

The Court has carefully considered all the evidence submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the Plaintiffs, establish the following relevant facts:

The Montgomery Fire Department is headed by the Fire Chief, who is the highest ranking officer.  The Deputy Fire Chief ("Deputy Chief") reports directly to the Fire Chief and is responsible for managing the day-to-day operations of the MFD by writing policies and procedures, operating guidelines, and rules and regulations; assisting in making personnel and apparatus assignments; and purchasing apparatus.  The Deputy Chief also supervises the six Assistant Fire Chiefs, each of whom is responsible for one of the MFD's six operating divisions: Administrative Division, Training Division, Emergency Medical Services Division, Special Operations Division, Inspections and Investigations Division, and the Fire Suppression Division.  K. Bolling ("Chief Bolling") has served as the Assistant Fire Chief over the Fire Suppression Division since November 2008.[3]

Watkins is employed as a Fire Suppression Lieutenant in the MFD's Fire Suppression Division.  The Suppression Division handles the day-to-day fire-fighting operations of the MFD.  The Suppression Division is made up of twenty-two fire companies, each of which is assigned one captain and two lieutenants.[4]  The twenty-two companies are housed in

---

[3]    C.E. Walker ("Chief Walker") held this position before Chief Bolling.

[4]     Each captain and the lieutenants rotate shifts every third day.  As a result, a captain is generally never on shift with a lieutenant for a particular company.

fifteen stations located throughout the City of Montgomery.  The City is further divided into four districts, each of which is managed by three District Chiefs.[5]

Each fire company operates on a repeating cycle of three twenty-four-hour shifts at each fire station—"A" shift, "B" shift, and "C" shift.  (Def.'s Ex. I, Aff. of J.L. Petrey, at ¶ 5, Doc. #66-9.)   Each shift is assigned to operate one of three apparatuses—a fire engine (also called a pumper truck), a ladder truck, or a heavy rescue truck.  (Def.'s Ex. I, at ¶ 5.) Each company assigned to a particular apparatus includes one captain and two lieutenants, each of whom supervises a different shift of their company.  (Def.'s Ex. I, at ¶ 5.)  Fire Suppression Lieutenants have command of their fire companies during their assigned shifts. (Def.'s Ex. I, at ¶ 5.)  There are also four District Chiefs on duty during each twenty-four hour shift, and they usually visit each station under their command during their shifts. (Def.'s Ex. I, at ¶ 6.)

It is undisputed that when Fire Suppression Lieutenants are on duty, they are the highest ranking officers in charge of their assigned company, and it is their duty to supervise the other firefighters in their company while at the fire station and when responding to emergency calls.  (Def.'s Ex. I, at ¶ 6.)  The job description of a Fire Suppression Lieutenant characterizes their work as "skilled firefighting work and supervisory work directing activities of a fire company during an assigned shift or special division work."  (Def.'s Ex. A, at 1, Doc. #66-1.)  Fire Suppression Lieutenants are not required to perform manual-labor

---

[5]   There are twelve District Chiefs in the MFD Suppression Division.  (Def.'s Br. in Support, Doc. #66, at 3 n.1.)

tasks, such as cutting grass at the fire stations and cleaning the station floors, but are required to participate in all physical training activities with their companies and to maintain good physical condition. (Def.'s Ex. I, at ¶¶ 6–7.) Fire Suppression Lieutenants have the duty of recommending whether employees in their companies receive merit raises and promotions and are required to perform evaluations on employees throughout the year. (Def.'s Ex. I, at ¶ 8.)

While on duty, Fire Suppression Lieutenants are responsible for responding to every emergency call to which their station is dispatched. (*See* Pls.' Exs. F–M, Affs. of Fire Suppression Lieutenants, Docs. ##68-6–68-14.) When responding to emergency calls, Fire Suppression Lieutenants determine the size of the unit necessary to combat the fire or emergency, communicate that determination to the MFD, supervise the officer driving the truck to the scene, and command the emergency scene until relieved by their superior officers—typically the District Chiefs. After being relieved, Fire Suppression Lieutenants direct their companies in fire suppression or rescue operations and directly participate in those operations as needed. (Def.'s Ex. I, at ¶ 9; Def.'s Ex. J, at ¶ 9, Doc. #66-10.) Fire Suppression Lieutenants are required to carry a full complement of firefighting gear: a fire helmet, protective hood, coat, pants, boots, gloves, a spanner wrench,[6] and a self-contained breathing apparatus. (Pls.' Ex. F, Aff. of Watkins, at ¶ 9, Doc. #68-6.)

The City has adopted a fourteen-day work period in which pay, overtime, and

---

[6]   A spanner wrench is a multi-function tool specially designed for fire-fighting that, among other things, is used to tighten fire hose couplings.

compensatory time is calculated.  In between each twenty-four hour shift, Fire Suppression Lieutenants receive forty-eight hours "off."  Due to this repeating schedule, Fire Suppression Lieutenants' normal tour of duty requires them to work 104, 112, and 120 hours in successive pay periods.

In October 2004, the City began paying Fire Suppression Lieutenants overtime for hours worked in excess of 106 hours during a single pay period pursuant to the newly promulgated first responder regulation.[7]  However, on February 22, 2005, then-Fire Chief John McKee distributed a memorandum to all MFD employees stating that "[a]fter consultations with the Department of Labor," the MFD had decided to classify all Fire Lieutenants except those employed as Fire Medic Lieutenants as exempt employees and to stop paying them overtime.  (Pls.' Ex. V, Doc. #68-22.)  It is undisputed that no employee of the City ever consulted with the United States Department of Labor ("DOL") regarding Plaintiffs' classification as first responders (Def.'s Resp. to Pl.'s Mot. to Facilitate Class Notice, Doc. #50, at 5).  There is also no evidence showing that the City ever sought an opinion letter from the DOL on Plaintiffs' first responder classification.

Since March 2005, the City has not paid Fire Suppression Lieutenants overtime pay for all hours worked in excess of 106 hours each two-week pay period.

---

[7]     29 C.F.R. § 541.3(b)(1).

8

## V. DISCUSSION

**A.**   **Applicable Law**

> *1.*   ***Overview of the Fair Labor Standards Act and Its Executive and Administrative Exemptions***

The FLSA governs minimum wage and overtime requirements for employees covered under the Act.  The FLSA requires that overtime be paid to covered employees at the rate of one and one-half times an employee's base rate of pay for hours worked in excess of the statutorily set amount; most employees covered by the FLSA are entitled to overtime compensation for "a workweek longer than forty hours."  29 U.S.C. § 207(a)(1).  Section 207(k) of the FLSA, however, provides an exemption to the typical forty-hour workweek for "any employee in fire protection activities or any employee in law enforcement activities."  29 U.S.C. § 207(k).  In certain circumstances, this exemption allows public agencies employing persons engaged in fire protection or law enforcement activities to calculate an employee's hours for overtime purposes according to work periods of twenty-eight days, rather than on a weekly basis, and sets a calculable threshold for the commencement of compensation at an overtime rate.   *See* 29 U.S.C. § 207(k).  Under the regulations interpreting § 207(k), which were promulgated by the DOL, employees engaged in fire-protection activities must be given overtime pay for all time worked beyond 106 hours each fourteen days.  29 C.F.R. § 553.230(c).

However, the FLSA provides for an exemption to the overtime requirement for persons "employed in a bona fide executive, administrative, or professional capacity."  29

U.S.C. § 213(a)(1).  As stated above, these exemptions "are to be construed narrowly, and the employer shoulders the burden of establishing that it is entitled to an exemption." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156 (11th Cir. 2008) (internal quotation marks and citation omitted).

Under the DOL regulations, an employee can be classified as a bona fide executive if: (1) he is "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) his "primary duty is management of the enterprise in which [he] is employed or of a customarily recognized department or subdivision thereof"; (3) he "customarily and regularly directs the work of two or more other employees"; and (4) he "has the authority to hire or fire other employees," or his "suggestions and recommendations as to the hiring, firing, advancement, promotion[,] or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a).

An employee falls within the administrative exemption if: (1) he is "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) his "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) his "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).

The regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  A court must base its determination of an employee's primary duty under either of these exemptions "on all the

10

facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a); *see also Barreto v. Davie Marketplace, LLC*, 331 Fed. App'x 672 (11th Cir. 2009) (applying this principle).  Relevant factors to be considered in this analysis include, but are not limited to: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  29 C.F.R. § 541.700(a).

The Eleventh Circuit has noted that the amount of time an employee spends performing exempt tasks, although a relevant factor, "is not dispositive of the primary duty issue." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1270 (11th Cir. 2008); *see also* 29 C.F.R. § 541.700(a).   An employee will generally satisfy the primary duty requirement if he spends more than half of his time performing exempt tasks.  29 C.F.R. § 541.700(b). Nevertheless, "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may . . . meet the primary duty requirement if the other factors support such a conclusion." *Id.*

### 2.     *First Responder Regulation*

In 2004, after notice and comment rule-making, the DOL enacted regulations, including the first responder regulation at issue in this case, which narrowed the scope of the

executive and administrative exemptions.[8]  *See* 69 Fed. Reg. 22122, 22122 & 22130 (Apr. 23, 2004).[9]

The first responder regulation, 29 C.F.R. § 541.3(b), provides that these "white collar" exemptions "do not apply to *fire fighters,* paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees, *regardless of rank or pay level*, who perform work such as *preventing, controlling or*

---

[8]    The Court affords the DOL's regulation controlling weight.  *See Chevron U.S.A., Inc. v. Natural Res. Defense Council*, 467 U.S. 837, 843–44 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.  Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."); *Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1302 (11th Cir. 2009) (stating that the FLSA regulations, "promulgated pursuant to an express delegation of legislative authority, are to be given controlling weight unless found to be arbitrary, capricious, or contrary to the statute").  The Court also affords considerable deference to the DOL's interpretation of the first responder regulation, because the DOL is the agency responsible for implementing the FLSA, *Patel v. Quality Inn South*, 846 F.2d 700, 703 (11th Cir. 1988).  The Court is obligated to afford the agency's interpretation deference even if that interpretation is articulated in a legal brief, so long as they are not "plainly erroneous or inconsistent with the regulations being interpreted."  *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) ("Where . . . an agency's course of action indicates that the interpretation of its own regulation reflects its considered views[,] . . . we have accepted that interpretation as the agency's own, even if the agency set those views forth in a legal brief.") (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

[9]    The preamble of the regulation stated:

The minimum wage and overtime pay requirements of the Fair Labor Standards Act (FLSA) are among the nation's most important worker protections.  These protections have been severely eroded, however, because the Department of Labor has not updated the regulations defining and delimiting the exemptions for "white collar" executive, administrative and professional employees.  By way of this rulemaking, the Department seeks to restore the overtime protections intended by the FLSA.

69 Fed. Reg. at 22122.

*extinguishing fires of any type [or]rescuing fire, crime or accident victims . . . .*" 29 C.F.R.

541.3(b)(1) (emphasis added).

The preamble expressly addressed the DOL's reasons for promulgating the first

responder regulation:

> The current regulations do not explicitly address the exempt status of police
> officers, fire fighters, paramedics or EMTs. This silence in the current
> regulations has resulted in significant federal court litigation to determine
> whether such employees meet the requirements for exemption as executive,
> administrative or professional employees. Most of the courts facing this issue
> have held that police officers, fire fighters, paramedics and EMTs and similar
> employees are not exempt because they usually cannot meet the requirements
> for exemption as executive or administrative employees . . . .  The [DOL] has
> no intention of departing from this established case law.  Rather, for the first
> time, the [DOL] intends to make clear in these revisions . . . that such police
> officers, fire fighters, paramedics, EMTs and other first responders are entitled
> to overtime pay.  *Police sergeants, for example, are entitled to overtime pay
> even if they direct the work of other police officers because their primary duty
> is not management or directly related to management or general business
> operations . . .*

69 Fed. Reg. at 22129 (emphasis in original).

The preamble to the 2004 revisions also noted that several federal courts had ruled

that "high-level police and fire officials" were exempt only if the employee's primary duty

was performing managerial tasks, including:

> evaluating personnel performance; enforcing and imposing penalties for
> violations of the rules and regulations; making recommendations as to hiring,
> promotion, discipline or termination; coordinating and implementing training
> programs; maintaining company payroll and personnel records; handling
> community complaints, including determining whether to refer such
> complaints to internal affairs for further investigation; preparing budgets and
> controlling expenditures; ensuring operational readiness through supervision
> and inspection of personnel, equipment and quarters; deciding how and where
> to allocate personnel; managing the distribution of equipment; maintaining

13

> inventory of property and supplies; and directing operations at crime, fire or accident scenes, including deciding whether additional personnel or equipment is needed.

69 Fed. Reg. at 22130 (collecting cases).

The Eleventh Circuit has yet to interpret and apply this regulation. However, the United States Court of Appeals for the Second Circuit recently examined the applicability of the first responder regulation to sergeants with the New York Police Department who had been denied overtime pay on the basis of the executive exemption. *See Mullins v. New York*, 653 F.3d 104 (2d Cir. 2011). In *Mullins,* the Second Circuit found that (1) the first responder regulation was ambiguous when read in light of the bona fide executive exemption and its interpreting regulation, 29 C.F.R. § 541.102, defining the primary duty of "management," *id.* at 113; (2) the Secretary of the DOL's interpretation of the regulation—that the first responder regulation did not "purport to make all police officers non-exempt," but that the "determining factor [of first responders' exempt status] remains their primary duty," *id.* at 110—was not plainly erroneous or inconsistent with the regulation, *id.* at 117; and (3) the DOL's interpretation was entitled to controlling deference.   *Id.*

In accepting the Secretary's interpretation, the Second Circuit concluded that courts must consider whether the management and supervisory work performed by the categories of employees listed in the first responder regulation is performed as part of the employees' duties as first responders.  *Id.* at 116.  In reaching its conclusion that the police sergeants' primary duty was law enforcement, not management, the Second Circuit highlighted the DOL's view that "giving direction and exercising discretion while performing field law

14

enforcement work do not transform [the sergeants'] non-management primary duty [into] a management primary duty." *Id.* at 118 (quoting DOL Amicus Br. at 11) (internal quotation marks omitted).

Ultimately, the Second Circuit held that, when an employee's management or supervisory tasks are performed while exercising their first responder duties, the employee's supervision should not be deemed management under the executive exemption; however, when management tasks are "performed by high-level personnel who typically d[o] not engage in any front-line activities," those duties would still be considered management. *See id.* The Court believes that the Second Circuit's holding is consistent with the DOL's regulation. *See* 29 C.F.R. § 541.3(b)(2)–(3) ("Such employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise . . . . [Nor do they] qualify as exempt administrative employees because their primary duty is not the performance of work directly related to the management or general business operations of the employer[.]").[10]

Plaintiffs argue that the first responder regulation at 29 C.F.R. § 541.3(b) should control the Court's decision in this case, because their primary duty is fighting fires rather than managing "the enterprise in which [they] are employed or a customarily recognized

---

[10]   A district court in the Sixth Circuit (which, like the Eleventh Circuit, has yet to interpret and apply the first responder regulation) has very recently relied on the Second Circuit's interpretation of the first responder regulation in applying the regulation to a factually similar case to the one at bar. *See Barrows v. City of Chattanooga*, No. 1:10-cv-280, 2012 WL 5451525, at *6–7 (E.D. Tenn. Nov. 7, 2012) (concluding there was factual dispute over whether fire captains' primary duty was controlling or extinguishing fires or management and denying defendant's motion for summary judgment on basis of the executive and administrative exemptions).

department or subdivision" of that enterprise.  29 C.F.R. § 541.3(b)(2).  The Court does not accept the Plaintiffs' argument that the first responder regulation supplants the executive and administrative exemptions and their interpreting regulations.  Instead, in light of the well-reasoned conclusion reached by the Second Circuit in *Mullins* and the DOL's interpretation of the first responder regulation as to police officers who perform law enforcement work in the field, the Court concludes that the first responder regulation must be applied "in conjunction with" the executive and administrative exemptions.  *Barrows*, 2012 WL 5451525, at *7; *see also Mullins*, 653 F.3d at 110 ("The regulation applies to any officer who, regardless of rank or pay-level, performs the types of duties enumerated in section 541.3(b)(1), and therefore must inform any analysis when the employees at issue are police officers who perform law enforcement work in the field." (quoting DOL's Amicus Br. at 3) (internal quotation marks omitted)).

B.    **Plaintiffs' Exempt Status**

In its Motion for Summary Judgment, the City argues that: (1) Plaintiffs are subject to the executive exemption because their primary duties are managing and directing the firefighters under their command; and (2) Plaintiffs are subject to the administrative exemption because their primary duties are related to the general business operations of the fire company and because they exercise discretion and independent judgment as to daily operations, emergency situations, and staffing decisions.

In response, Plaintiffs contend that they are non-exempt first responders under the language of § 541.3(b) because their primary duty is "preventing, controlling, or

16

extinguishing fires and rescuing fire or accident victims."  (Pls.' Br., at 16, Doc. #73.)  In other words, Plaintiffs argue that there is at least a genuine dispute of material fact as to whether Plaintiffs can be classified as exempt from the FLSA's overtime requirements under either the administrative or executive exemptions or as non-exempt under the first responder regulation at 29 C.F.R. § 541.3(b).  The Court agrees with Plaintiffs that the dispositive question to be answered in this case is whether their primary duty is as first responders or as exempt executive or administrative employees.

The record evidence shows that Plaintiffs' duties as Fire Suppression Lieutenants include both first responder tasks and managerial and administrative tasks.  The MFD's job description for Fire Suppression Lieutenants and the Plaintiffs' sworn affidavits show that Plaintiffs are "fire fighters  . . . who perform work such as preventing, controlling or extinguishing fires of any type [or] rescuing fire, crime or accident victims . . . ." 29 C.F.R. 541.3(b)(1).  (*See* Def.'s Ex. A, at 1, Doc. #66-1 ("This is skilled firefighting work and supervisory work directing activities of a fire company . . . .); Watkins Aff., Pls.' Ex. F, at ¶ 10, Doc. #68-6 ("When I am on duty, I respond to every [emergency] call to which my company is dispatched.  At an emergency scene[,] I perform emergency operations including search and rescue operations [and] extinguishing fires . . . .")).

The City contends, however, that the majority of Plaintiffs' duties were management duties: conducting trainings, preparing employee evaluations, setting daily schedules, and directing the activities of the company at the fire station.   The City presented evidence that a very small percentage of Plaintiffs' time—not more than three to four hours per shift—was

spent responding to emergency calls.  However, even if Plaintiffs spent only a small percentage of each shift responding to emergency calls, the percentage of time spent on exempt duties does not decide the primary duty question if the other relevant factors—such as the employee's relative freedom from supervision and the relative importance of the exempt duties in relations to the non-exempt duties—support the conclusion that Plaintiffs are first responders.  *See* 29 C.F.R. § 700.

As to the level of discretion possessed by Fire Suppression Lieutenants, Plaintiffs presented evidence that their duties were not relatively free from supervision and that they had very little discretion in the exercise of their duties, even when supervising their fire company.  Plaintiffs argue that their decisions were largely constricted by the Rules and Regulations of the MFD and that they did not have the discretion to assign tasks, determine what topics would be covered in the trainings or the daily schedule for their company, or take disciplinary actions.  Plaintiffs have presented evidence showing that the day-to-day fire station tasks were assigned by the Captains prior to the start of the shift and that the firefighters knew prior to the start of their shifts which tasks they were responsible for.  (Pls.' Ex. D, MFD Rules and Regulations, Doc. #68-4, at 9; Pls.' Ex. F, Watkins Aff., at ¶ 13, Doc. #68-6).  While there is evidence that Plaintiffs exercised the most discretion in the direction of their company while responding to emergency calls, the supervisory nature of Plaintiffs' work when fighting fires does not preclude application of the first responder regulation.  The regulation states, in pertinent part, that a "fire fighter whose primary duty is to investigate crimes or fight fires is not exempt under section 13(a)(1) of the [FLSA] merely because the

18

. . . fire fighter also directs the work of other employees in . . . fighting a fire." 29 C.F.R. § 541.3(b)(2).

When considering the relative importance of Plaintiffs' first responder duties as compared with their managerial or administrative tasks, the Court finds that a reasonable juror could conclude that this factor weighs in favor of characterizing the Plaintiffs as first responders rather than exempt executive or administrative employees. The Plaintiffs presented evidence that they are required to maintain good physical condition and to carry the same firefighting gear as the rest of their company. These facts, along with the very first sentence of the MFD's job description, which characterizes a Fire Suppression Lieutenant's work as "skilled firefighting work and supervisory work directing activities of a fire company . . . " supports the Court's conclusion that there is a disputed issue of fact as to whether Plaintiffs should be classified as executive and administrative exempt employees or non-exempt first responders.

As to the relationship between the salary of Fire Suppression Lieutenants and the salary and wages paid to other non-exempt employees performing the same type of work, the City directs the Court to the City of Montgomery Pay Plan ("Pay Plan"). (Def.'s Ex. B, Doc. #66-2). As evidence that Plaintiffs receive extra compensation for their additional management duties, the City points out that Fire Suppression Lieutenants receive a higher annualized salary than the lower-ranking firefighters they supervise. However, the Pay Plan does not appear to take into account the extra overtime wages that the lower-ranking firefighters receive because they are classified as non-exempt first responders. In sum, the

19

City has provided no concrete comparison of the total wages received by Plaintiffs and the firefighters they supervise.  Thus, the Court concludes that this factor does not weigh in favor of Plaintiffs' primary duty being managerial.

Because the Court concludes there is an issue of disputed fact on whether the primary duty of a Fire Suppression Lieutenant is one of a first responder or one of an exempt executive or administrative employee, the Court finds that Defendant's Motion for Summary Judgment is due to be denied.

**C.   Applicable Statute of Limitations**

The statute of limitations for overtime claims under the FLSA is generally two years, but if a claim is one "arising out of a willful violation," another year is added to it.  29 U.S.C. § 255(a).   To establish such a willful violation, "the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed *reckless disregard* about whether it was."   *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162–63 (11th Cir. 2008) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)) (emphasis added).  The Code of Federal Regulations defines reckless disregard in this context to be "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]." 5 C.F.R. § 551.104.

The City is not seeking summary judgment on the issue of whether the appropriate limitations period to be applied in this case is the two-year limitations period, rather than the three-year period for a "willful violation" under 29 U.S.C. § 255(a).  (*See* Def.'s Br. in

Support, at 32, Doc. #66.)[11]  Instead, the City requests a ruling from the Court that any claims arising before March 7, 2008, three years before the filing of this lawsuit, are barred by even the most generous limitations period under the FLSA.  Plaintiffs respond that the limitations period should be tolled from February 22, 2005, until July 12, 2011,[12] under the doctrines of equitable tolling and equitable estoppel, which would essentially extend the limitations periods for claims in this lawsuit to seven years.

Before tolling the applicable statute of limitations under the FLSA, the Court must find that extraordinary circumstances exist to justify applying this equitable principle.  *See Jackson v. Astrue*, 506 F.3d 1349, 1353–54 (11th Cir. 2007) ("Equitable tolling is appropriate in situations where the defendant misleads the plaintiff, allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the wrong perpetrated against her." (quoting *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1155 (11th Cir. 2005)). The Eleventh Circuit has noted that "the equitable tolling doctrine [is] most often applied . . . in the situation in which a defendant's fraudulent deceptions leave a plaintiff ignorant of the facts or even existence of his claim."  *In re Int'l Admin. Servs.*, *Inc.*, 408 F.3d 689, 701 (11th Cir. 2005) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)).  In such a

---

[11]     Even if the undisputed evidence before the Court had established a violation of the FLSA in this case, the issue of whether such a violation was "willful" would pass summary judgment.  Indeed, the fact-specific inquiry as to whether such a violation was willful is generally best left to the jury. *See McGuire v. Hillsborough Cnty.*, *Fla.*, 511 F. Supp. 2d 1211, 1218 (M.D. Fla. 2007).

[12]     July 12, 2011, is the date that Plaintiffs allege that the City of Montgomery disclosed through its discovery responses that no City employee had ever consulted with the DOL before Chief McKee distributed the February 22, 2005, memorandum to the MFD.

situation, the limitations period is tolled until a plaintiff discovers the fraud.  *Id.*

The Eleventh Circuit has recognized two sets of circumstances in which the principle of equitable tolling has generally been applied: (1) "when the fraud goes undiscovered because the defendant has taken positive steps after the commission of the fraud to keep it concealed, then the statute of limitations is tolled until the plaintiff actually discovers the fraud" and (2) "[when] the defendant has not actively concealed the fraud, and the plaintiff [has] exercise[d] due diligence in an attempt to discover the fraud."  *In re Int'l Admin. Servs.,* 408 F.3d at 701.  In the second set of circumstances, "[t]he limitations clock starts ticking when the plaintiff obtains—or should have obtained—knowledge of the underlying fraud." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of directing the Court to the undisputed facts which entitle it to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp.,* 477 U.S. at 323; *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 832 (11th. Cir. 1999).  In other words, for Plaintiffs to be limited to a three-year limitations period, the City must show that Plaintiffs "either knew of their claim or had notice sufficient to prompt them to investigate and that, had they done so diligently, they would have discovered the basis for their claims."  *Morton's Mkt.*, 198 F.3d at 832 (11th Cir. 1999).  The Eleventh Circuit has instructed that:

> In determining whether there is an issue of fact for trial regarding plaintiffs claim of fraudulent concealment, we must resolve all doubt against the moving party. . . .  This standard is applied with particular stringency where it is claimed that the defendant's conduct prevented the plaintiff from discovering his claim prior to the expiration of the limitations period.

22

*Id.* The related issues of when a plaintiff is on "notice" of his claim, and when a plaintiff, who is exercising due diligence, should have known of the basis for his claims, have generally been held to be questions of fact for the jury. *Id.*

In sum, before the Court can determine that equitable tolling is not warranted, the City must direct the Court to undisputed facts in the record which "demonstrate *conclusively* that plaintiffs had notice of their claims, and that, had they exercised reasonable diligence, they would have discovered adequate grounds" for filing their lawsuit during the limitations period. *Id.* (emphasis added). "It is not enough for summary judgment to point to facts which might have caused a plaintiff to inquire, or could have led to evidence supporting his claim." *Id.* at 832–33.

Plaintiffs allege that Chief McKee's representation in his February 22, 2005, memorandum that the City had consulted with the DOL before reclassifying Plaintiffs as exempt employees (*see* Pls.' Ex. V, Doc. # 68-22), was a fraud which prevented them from discovering their overtime claims under the FLSA before the applicable limitations period expired. The City has pointed to no facts showing conclusively that Plaintiffs should have somehow discovered their claims between the date of the February 22, 2005, memorandum and July 12, 2011, the date the City disclosed that it had never consulted the DOL regarding the Fire Suppression Lieutenants' status as non-exempt first responders. In light of the foregoing, and taking the facts in the light most favorable to Plaintiffs, the Court concludes that the City has not met its burden to preclude application of equitable tolling. Indeed, the evidence shows that there is a disputed issue of fact as to whether the City misrepresented

and concealed the basis for its decision to stop paying Plaintiffs overtime—that it had consulted with the DOL regarding Plaintiffs' exempt status—and whether this misrepresentation prevented Plaintiffs from discovering their claims.[13]

### VI. CONCLUSION

Having reviewed and applied the relevant law to the facts of this case, the Court finds that there are disputed issues of material fact and that the City is not entitled to judgment as a matter of law.   Accordingly, it is hereby ORDERED that the City of Montgomery's Motion for Summary Judgment (Doc. #65) is DENIED.

DONE this the 29th day of January, 2013.

_____/s/ Mark E. Fuller_____
UNITED STATES DISTRICT JUDGE

---

[13]   Because the Court has concluded that there is a disputed issue of fact as to whether the applicable limitations period should be equitably tolled, the Court finds no need to analyze the merits of Plaintiffs' equitable estoppel argument.