IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROOSEVELT WATKINS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CASE NO. 2:11-cv-158-MEF |
| | ) |
| CITY OF MONTGOMERY, | ) (WO – Publish) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

This is a collective action seeking overtime compensation under the Fair Labor Standards Act ("FLSA" or the "Act") brought by fifty-four Fire Suppression Lieutenants ("Plaintiffs") against their employer, the City of Montgomery (the "City"). Plaintiffs contend that the City failed to properly classify them as non-exempt "first responders" and to pay them certain overtime compensation as required by law. By Memorandum Opinion and Order dated January 29, 2013 (Doc. #92), the Court denied the City's Motion for Summary Judgment, and the case proceeded to trial.

Just prior to trial, however, it became clear that there was an unresolved legal question: whether certain disciplinary suspensions imposed on some of the Plaintiffs during the relevant time period were impermissible under the regulations so as to destroy what the City alleged was Plaintiffs' exempt status as salaried executives. Plaintiffs did not plead this particular theory of FLSA liability in their Complaint (Doc. #1) or their Amended Complaint

(Doc. #31); rather, they alleged only that the City had violated the FLSA by failing to classify Plaintiffs as non-exempt first responders. Moreover, Plaintiffs arguably conceded that they were paid on a "salary basis" during discovery.[1]

Although Plaintiffs raised the issue of improper suspensions in their Response to the City's Motion for Summary Judgment (Doc. #68, at 40), the arguments and evidence on this issue were incomplete at best. After considering the arguments and evidence presented at summary judgment, and because there were disputes of material fact on the issue of suspensions and on another element of the exemption at issue—Plaintiffs' primary duty as Fire Suppression Lieutenants—the Court denied summary judgment without addressing the merits of the parties' somewhat superficial arguments on the alleged improper suspensions.

Plaintiffs' claims proceeded to trial on February 25, 2013. At the end of trial, Plaintiff moved for judgment as a matter of law on the ground that the City failed to present sufficient evidence entitling it to the executive exemption, which was denied. At the close of the parties' evidence, the Court asked the jury for an advisory verdict on the issue of whether fourteen unpaid disciplinary suspensions imposed on twelve Plaintiffs in this case[2] were

---

[1] In response to the City's request for admission that Plaintiffs were paid on a "salary basis," an element the City had to prove as part of its affirmative defense, Plaintiffs admitted this request in part and denied it in part. (Pl.'s Resp. to Def.'s Request for Admissions, at ¶ 3, Doc. #111.) Specifically, Plaintiffs responded: "Admitted in part, denied in part. Plaintiff receives a base salary, but the number of hours worked per pay period varies, so his pay varies." (Pl.'s Resp. to Def.'s Request for Admissions, at ¶ 3, Doc. #111.) While Plaintiff's denial was ambiguous, it appears to be based solely on the fact that Plaintiffs work fluctuating hours each pay period (because their shifts are structured in a three-day cycle, with 24 hours of on-duty time followed by 48 hours of off-duty time). (Pl.'s Resp. to Def.'s Request for Admissions, at ¶ 3, Doc. #111.)

[2] The parties stipulated to these unpaid disciplinary suspensions.

permissible deductions from the salaries of exempt, executive employees under the Department of Labor ("DOL") regulations. In response, the jury returned an advisory verdict finding that the unpaid disciplinary suspensions were permissible salary deductions. The jury also returned a general verdict in favor of the City on Plaintiffs' exempt status as executive employees. Having considered the foregoing, the record as a whole, and the evidence presented at trial, the Court finds that, as a matter of law, the fourteen disciplinary suspensions at issue were permissible under the DOL regulations, and therefore, do not destroy Plaintiffs' exempt status or disrupt the jury's verdict in favor of the City.

## II. FACTS

The Personnel Board of the City and County of Montgomery (the "Personnel Board")[3] has a published policy expressly prohibiting improper deductions from exempt employees' pay. (Def.'s Tr. Ex. #6.) However, the policy also provides that "[a]ppointing authorities may make deductions from the wages of exempt employees for . . . suspensions for violation of workplace safety rules and workplace conduct rules." (Def.'s Tr. Ex. #6.) The policy includes a complaint procedure that exempt employees may use to contest suspensions they believe are improper. (Def.'s Tr. Ex. #6.)

The parties have stipulated that the following disciplinary suspensions were imposed by the Montgomery Fire Department ("MFD") on twelve Plaintiffs in this case:

---

[3] The Personnel Board is an entity created by an Alabama statute that is responsible for adopting and revising a position classification system for the City. *See* Ala. Act No. 2280 § 2(e) (1971), *amended by* Ala. Act. No. 167 § 5 (1972).

- Plaintiff Watkins was suspended without pay for 4 days in March of 2008 for driving to the wrong address;

- Plaintiff G.A. Treloar was suspended without pay for 4 days in May of 2008 for missing a street;

- Plaintiff D.W. Dillard was suspended without pay for 3 days in May of 2008 for calling a female District Chief "The Queen";

- Plaintiff J.A. Money was suspended without pay for 4 days in August of 2008 for driving to the wrong address;

- Plaintiff A.W. Wiggins was suspended without pay for 5 days in June of 2008 for being overweight;

- Plaintiff C.K. Tranthom was suspended without pay for 4 days in August of 2008 for leaving early without permission;

- Plaintiff L.P. Stewart was suspended without pay for 5 days in September of 2008 for being overweight;

- Plaintiff L. McDade was suspended without pay for 9 days in September of 2008 for receiving a reckless driving ticket;

- Plaintiff R.T. Crawford was suspended without pay for 5 days in October of 2008 for receiving a ticket for fireworks;

- Plaintiff G.A. Treloar was suspended without pay for 5 days in May of 2009 for being overweight;

- Plaintiff S.L. Lewis was suspended without pay for 4 days in February of 2009 for driving to the wrong address;

- Plaintiff R.L. Garmon was suspended without pay for 29 days for disrespecting a District Chief;

- Plaintiff L.P. Stewart was suspended without pay for 29 days in April of 2011 for being disrespectful to an Assistant Chief;

- Plaintiff M.D. Thomas was suspended without pay for 1 day in January of 2012 for being overweight.

All of the suspensions at issue were imposed pursuant to a written MFD rule or policy and were uncontested by Plaintiffs at the time the suspensions were imposed.

### III. DISCUSSION

**A.   Applicable Law**

**1.   Executive Exemption Under the FLSA**

The FLSA requires that overtime be paid to employees covered by the Act at a rate of one and one-half times an employee's base rate of pay for hours worked in excess of the statutorily set amount; for most employees, the overtime pay threshold is "a workweek longer than forty hours." 29 U.S.C. § 207(a)(1). Section 207(k) of the FLSA, however, provides an exemption to the typical forty-hour workweek for "any employee in fire protection activities." 29 U.S.C. § 207(k). Under the FLSA's interpreting regulations, fire protection employees who are paid according to a fourteen-day work period are entitled to receive

overtime pay for every hour worked in excess of 106 hours in a single work period. 29 C.F.R. § 553.230(c).

Nevertheless, the FLSA provides an exemption to the overtime requirement for persons "employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). All exemptions under the FLSA are narrowly construed against the employer, and the employer bears the burden of establishing that it is entitled to an exemption. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156 (11th Cir. 2008). An employer seeking entitlement to the bona fide executive exemption must establish that: (1) the employee is "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) the employee's "primary duty is management of the enterprise in which [he] is employed or of a customarily recognized department or subdivision thereof"; (3) the employee "customarily and regularly directs the work of two or more other employees"; and (4) the employee "has the authority to hire or fire other employees," or that the employee's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a). At this stage of the proceedings, the Court's sole focus is whether the City has established the first prong of the first element—that the City compensated Plaintiffs on a "salary basis," as that term is defined in the applicable regulations. The other elements were already decided by the jury or are undisputed by the parties.

### 2.     Salary Basis Test

An employee is deemed to be paid on a salary basis if the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation [that] is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602(a).  However, this general rule prohibiting deductions from an exempt employee's pay is subject to a number of exceptions, two of which are applicable in this case.  *See* 29 C.F.R. § 541.602(b)(1)–(7) (setting forth exceptions).  Moreover, the fact that an employer makes impermissible deductions from an exempt employee's salary does not automatically destroy an employee's exempt status; rather, the regulations make clear that the key inquiry is whether the employer *intended* to pay the exempt employees on a salary basis.  29 C.F.R. § 541.603(a).

#### *a.     Deductions for Violations of Safety Rules of Major Significance*

An employer may, in good faith, make deductions from an exempt employee's pay for violations of "safety rules of major significance."  29 C.F.R. § 541.602(b)(4).  The regulations explain that safety rules of major significance "include those relating to the prevention of serious danger in the workplace or to other employees"—for example, "rules prohibiting smoking in explosive plants, oil refineries, and coal mines."  *Id.*

The Eleventh Circuit addressed this exception in *Avery v. City of Talladega*, 24 F.3d 1337 (11th Cir. 1994).  In *Avery*, the Circuit held that a three-day unpaid disciplinary suspension of a police lieutenant for leaving the scene of a suicide at which he was the

officer in charge destroyed the salaried, and thus, exempt status of an entire class of police lieutenants. *Id.* at 1341–42. Although the lieutenant's insubordinate act was "blameworthy," the Circuit reasoned, such an act "did not create serious danger to the police department, or to any of [the lieutenant's] fellow officers" so as to fall within the exception. *Id.* at 1342. In so holding, the Circuit abstained from construing the term "safety rules of major significance" broadly and instead followed the general rule that all overtime exemptions be construed narrowly against the employer. *Id.* at 1341; *see also Atlanta Prof'l Firefighters Union v. City of Atlanta*, 920 F.2d 800, 804 (11th Cir. 1991) (construing administrative exemption narrowly and concluding fire captains were exempt, administrative employees). Recognizing that a police department's mission is to protect public safety, the Circuit refused to accept the defendant's construction of the exception to include rules that "relate to the safety of the public at large." *Avery*, 24 F.3d at 1341. The Circuit further acknowledged that the regulations restricted the safety rule exception to rules relating to the prevention of serious danger to the employer's property and to the safety of other employees, explaining that "the FLSA regulations are not written to help promote discipline and public safety." *Id.*

### b.     *Deductions for Violations of Workplace Conduct Rules*

After the August 2004 amendments to the regulations interpreting the executive, administrative, and professional exemptions, an employer may also reduce an exempt employee's pay by way of unpaid disciplinary suspensions, imposed in good faith, for violations of "workplace conduct rules."  29 C.F.R. § 541.602(b)(5); *see also* Defining and

8

Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122 (Apr. 23, 2004). The regulations require that the suspensions be imposed pursuant to a "written policy applicable to all employees." 29 C.F.R. § 541.602(b)(5). The preamble states that this exception was added to allow employers to hold their exempt employees to the same standards of conduct as non-exempt employees, which was deemed necessary in light of employers' increased risk of liability for the conduct of their exempt employees. 69 Fed. Reg. at 22177.

The term "workplace conduct rules" has yet to be interpreted or clarified by the Eleventh Circuit or any other circuit and has been applied by very few district courts. However, the preamble to amended regulations gives some guidance on the term. *Id.* The DOL indicated that it did not intend the term "workplace conduct rules" to be construed expansively, but instead intended it to cover only serious workplace misconduct, such as violations of workplace harassment policies, or violations of state or federal laws, not performance or attendance issues. *Id.* Despite its admonition that the term be construed narrowly, the DOL expressly stated that the rule should not preclude an employer from imposing a disciplinary suspension for misconduct that occurs off of the employer's property, as long as the employer has a "bona fide" rule covering such conduct. *Id.*

### 3.    Effect of Improper Deductions from Salary on Employee's Exempt Status

Even if an employer makes deductions from an exempt employee's salary that do not fall within any of the exceptions to the salary basis requirement in § 541.602(b), an employee's exempt status is not automatically destroyed. An employer will lose the

9

exemption only if the facts show that the employer did not intend for the employee to be paid on a salary basis. 29 C.F.R. § 541.603(a). The regulations provide that an actual practice of making improper deductions satisfies the intent requirement. *Id.* An actual practice may be determined by considering a list of non-exhaustive factors: (1) the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; (2) the time period during which the employer made improper deductions; (3) the number and geographic location of employees whose salary was improperly reduced; (4) the number and geographic location of managers responsible for making the improper deductions; and (5) whether the employer has a clearly communicated policy permitting or prohibiting improper deductions. *Id.*

Even if the facts show an actual practice of making improper deductions, the exemption is lost only during the time period when the improper deductions were made for employees in the same job classification working for the same managers responsible for the improper deductions. 29 C.F.R. § 541.603(b). Furthermore, isolated or inadvertent improper deductions will not destroy an employee's exempt status if the employer reimburses the employee for the improper deduction. 29 C.F.R. § 541.603(c).[4] Finally, if an employer

---

[4] The regulations do not specify a time within which an employer must reimburse an employee to preserve the exempt status of an employee. 29 C.F.R. § 541.603(c)–(d). The Supreme Court, in interpreting the pre-2004 regulations, which included a "window of correction" through which employers could reimburse improper deductions, refused to hold that "reimbursement must be made immediately upon the discovery that an improper deduction was made." *Auer v. Robbins*, 519 U.S. 452, 463–64 (1997); *see also Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2012 WL 6093802, at *9 n.17 (S.D. Ala. Dec. 7, 2012) (relying on *Auer* and rejecting plaintiff's argument that employer could not preserve exemption by reimbursing employees after summary judgment briefing was underway, and reasoning that "nothing in the present version of [the 'window of correction'

has a clearly communicated policy prohibiting improper pay deductions that includes a complaint mechanism, reimburses employees for improper deductions, and makes a good faith commitment to comply in the future, the employer will only lose the exemption if it willfully violates its policy by continuing to make improper deductions after receiving employee complaints. 29 C.F.R. § 541.603(d).[5]

## B. Application of Law to Facts

The fourteen suspensions Plaintiffs claim were improper were imposed for the following violations of written rules or policies: (1) driving to the wrong address or missing a street on a fire call; (2) leaving early without permission; (3) disrespecting a superior officer; (4) violating the MFD's weight policy; and (5) violating the law. The Court concludes, as a matter of law, that all of these suspensions were permissible because they were imposed for violations of safety rules of major significance or workplace conduct rules pursuant to 29 C.F.R. § 541.602(b)(4)–(5).

### 1. Driving to the Wrong Address or Missing Streets on Fire Calls

Driving to the wrong address and missing a street when responding to an emergency call constitute violations of both safety rules of major significance and workplace conduct rules. As the regulations state, safety rules of major significance "include those relating to

---

regulation] suggests that the DOL intended to impose any kind of deadline on the timing of reimbursement as a prerequisite for an employer to avail itself of the window of correction").

[5] Despite the technicality inherent in this section of the regulations, the DOL has made it clear that it "should not be construed in an unduly technical manner so as to defeat the exemption." 29 C.F.R. § 541.603(e).

the prevention of serious danger in the workplace or to other employees." 29 C.F.R. § 541.602(b)(4); *Avery*, 24 F.3d at 1341. This exception easily applies here. A fire company's tardiness in arriving on the scene of an emergency because of a fire lieutenant's misfeasance in directing his sergeant where to drive puts at risk the lives of the District Chiefs and members of other fire companies who may be responding to the correct address or location of the emergency call. The rule requiring all MFD members to have knowledge of their territories is intended to prevent this from happening.

Such misfeasance also falls easily within the workplace conduct rule exception. 29 C.F.R. § 541.602(b)(5). The addition of this exception to the regulations gives employers more freedom to hold exempt employees to the same standards of conduct as non-exempt employees, as long as the employer has a written rule in place covering the conduct. 69 Fed. Reg. at 22177. The MFD has a written policy requiring its members to "have knowledge of all streets located in their first-in territory." (MFD Rules and Regulations, at 46, Def.'s Tr. Ex. #23.) Although the Court acknowledges that the workplace conduct rule exception was not intended to address performance or attendance issues, *see* 69 Fed. Reg. at 22177, the Court finds that a firefighter's act of driving to the wrong address or missing a street on an emergency call within his territory constitutes "serious workplace misconduct" within the intended reach of the workplace conduct rule exception, because it rises above a mere job performance issue. *Id.*

To the extent that a violation of this type could conceivably be considered impermissible under either the safety rule of major significance exception or the workplace

conduct rule exceptions, the facts in this case do not show that, in imposing deductions from Plaintiffs' salaries for driving to wrong addresses, the City did not *intend* to pay Plaintiffs on a salary basis. 29 C.F.R. § 541.603(a). The evidence shows that there were only four suspensions imposed for this reason between March of 2008 and the time of trial. Moreover, the City, by way of the Personnel Board, has a clear policy prohibiting improper deductions from pay, and there is no evidence suggesting that, in making these deductions, it was the City's goal to no longer pay Plaintiffs on a salary basis. (Def.'s Tr. Ex. #6.)

### 2. Leaving Early Without Permission

Plaintiff C.K. Tranthom was suspended in 2008 without pay for leaving his shift early in violation of a written rule prohibiting MFD members from leaving their assigned shift early. (Tranthom Disciplinary, Doc. #69-1.) It is undisputed that Fire Suppression Lieutenants are often the highest-ranking officers at the fire station and are in charge of directing the other, less experienced members of their fire companies in responding to an emergency call. A lieutenant who leaves his shift early renders his fire company leaderless if an emergency call is received before the end of the shift, putting the lives of the members of his fire company at risk if they have to dispatch to a fire scene. As such, a suspension for this conduct falls within the ambit of the safety rule of major significance exception and does not destroy Plaintiffs' salaried status. Such conduct would also affect the manning of the fire companies, possibly leaving a truck or station understaffed.

### 3. Disrespecting a Superior Officer

The parties stipulated to three instances in which a Plaintiff was suspended without pay for disrespecting or harassing a superior officer. Because the parties have failed to provide a date for one of the suspensions for this type of conduct, involving Plaintiff R.L. Garmon, it is impossible for the Court to determine, based on the evidence before it, whether this instance fell within the applicable two-year limitations period in this action. 29 U.S.C. § 255(a). Thus, the Court will not analyze this third instance.[6] However, the Court concludes that the other two suspensions for disrespecting a superior officer are covered by the workplace conduct rule exception, and thus, are permissible under the regulations.

The MFD Rules and Regulations expressly require that all members of the MFD "accord all officers in the Department respect due their rank" (MFD Rules and Regulations, at 46, Sec. 304, Def.'s Tr. Ex. #23), and "be subject to the orders and directives of all superior officers at all times." (MFD Rules and Regulations, at 47, Sec. 310.) The Rules further prohibit the use of "indecent, profane, sexist, ethnic slurs, or abusive language" and "any acts of harassment." (MFD Rules and Regulations, at 47–48, Sec. 317.) These

---

[6] At trial, the jury found that the Plaintiffs did not meet their burden of proving that the City had willfully violated the FLSA, and accordingly, the two-year statute of limitations applies in this case. 29 U.S.C. § 255 ("Any action . . . to enforce . . . unpaid overtime compensation . . . under the Fair Labor Standards Act . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."). Out of an abundance of caution, the Court analyzes the propriety of all suspensions that fell within the three-year period preceding the filing of this action on March 7, 2011. However, the Court refuses to analyze Garmon's suspension because there is no reliable evidence that this suspension was imposed during the two-year or three-year limitations periods.

14

suspensions, one of which was imposed for calling a female District Chief "the Queen" and another of which was imposed for yelling at an Assistant Fire Chief, fall within the workplace conduct rule exception. Both of these instances rise to the level of "serious workplace conduct" that is intended to include workplace harassment. Moreover, the evidence shows that suspensions for insubordination or harassing behavior were imposed on exempt and non-exempt employees alike. *See also* 29 C.F.R. 541.602(b)(5) (requiring that suspensions be imposed pursuant to a written policy applicable to all employees). According to the list of disciplinary suspensions produced by the City, a Captain and a District Chief were also suspended for harassing and insubordinate conduct. (Pl.'s Ex. CC, at 9, Doc. #68-29.)

Even if the Court was not convinced that suspensions for insubordination fell outside of the workplace conduct rule exception, there is no evidence in the record demonstrating that, in imposing two suspensions for this type of misconduct, the City intended to treat its Fire Suppression Lieutenants as hourly employees. 29 C.F.R. § 541.603(a). To the contrary, the evidence shows that there were only two suspensions imposed for this reason between March of 2008 and the time of trial. Furthermore, the Personnel Board's clear policy of prohibiting improper deductions from pay weighs heavily against a finding that the City had an actual practice of paying Plaintiffs on an hourly, rather than a salary basis. (Def.'s Tr. Ex. #6.)

In summary, the Court first concludes that these suspensions were imposed by the City in good faith for infractions of a written workplace conduct rule applicable to all MFD

15

employees and were thus permissible deductions. Moreover, even if the suspensions for insubordination fell outside the workplace conduct rule exception, they do not destroy the salaried status of Plaintiffs because there is no evidence showing that the City did not intend to pay Plaintiffs on a salary basis.

### 4. Violations of the Weight Policy

The parties stipulated to four instances between June 2008 and January 2012 in which unpaid disciplinary suspensions were imposed for violations of the MFD weight policy. (Def.'s Ex. G, Doc. #69-7.) At trial, the City argued that these suspensions were permissible because the weight policy constituted a safety rule of major significance, thus making the deductions proper under the regulations. The Court agrees with the City. At trial, the City elicited testimony from District Fire Chief Dennis Ware ("Chief Ware") that heart attacks are the leading causes of death among firefighters on the fire ground.[7] Assistant Fire Chief Kelly Gordon corroborated this fact and added that over fifty percent of firefighter fatalities on the fire ground are a direct result of heart attacks. (Cross Exam. of Chief Gordon, Trial Tr., February 28, 2013.) Chief Gordon testified that when a firefighter suffers a heart attack while fighting a fire, which is more likely to occur if the firefighter is overweight, "it pulls men off of the firefighting activity and puts a strain on the suppression operation," putting the lives of the other firefighters in danger. (Cross Exam. of Chief Gordon, Trial Tr., February 28, 2013.)

---

[7] In response to defense counsel's inquiry as to whether a heart attack suffered by a firefighter on the fire ground could put lives in danger, Chief Ware answered, "Definitely." (Cross Exam. of Chief Ware, Trial Tr., February 27, 2013.)

16

Plaintiffs rely almost exclusively on the Eleventh Circuit's holding in *Avery* for their position that the disciplinary suspensions for violations of the weight policy do not arise from infractions of safety rules of major significance, and thus, are impermissible. (Pls.' Summ. Judg. Resp. Br., at 33–34, Doc. #73.) The facts of the present case, however, are easily distinguishable from the facts the Eleventh Circuit considered in *Avery*. In concluding that a police lieutenant's leaving the scene of an apparent suicide early did not constitute an infraction of a safety rule of major significance to preserve the lieutenant's salaried status, the Circuit reasoned that the lieutenant's "blameworthy insubordination did not create serious danger to the police department or to any of [the lieutenant's] fellow officers." *Avery*, F.3d at 1342. The testimony and evidence presented in this case, however, demonstrate that a Fire Lieutenant's violation of the weight policy may jeopardize the lives of their fellow firefighters on the fire ground.

Even assuming the suspensions imposed for violations of the weight policy were impermissible deductions under the amended regulations, Plaintiffs' exempt status is not destroyed. There is no evidence showing that, when the City deducted the pay of four of the Plaintiffs for violating a policy that was applicable to both exempt and non-exempt fire department employees, it did not intend to pay Plaintiffs on a salary basis. Indeed, the suspensions for being overweight were few and far between over the course of three and a half years. Moreover, the Personnel Board has a published policy that prohibits impermissible deductions from exempt employees' pay and provides a complaint mechanism through which employees can challenge salary deductions. (Def.'s Tr. Ex. #6.) Thus, in the

17

Court's view, the imposition of these suspensions does not constitute an actual practice of imposing impermissible deductions pursuant to 29 C.F.R. § 541.603(a), so as to destroy Plaintiffs' exempt status.

### 5. Violations of the Law

The Personnel Board Rules allow an exempt employee's pay to be reduced for violations of state or federal law. (Def.'s Tr. Ex. #6, Section 13.) Two Plaintiffs in this case were suspended without pay for violations of the law—one for reckless driving, the other for using fireworks. Plaintiffs assert that the suspensions were improper and do not fall within any of the exceptions to the general rule prohibiting deductions from exempt employees' salaries based on the quality or quantity of their work. This argument simply cannot stand in light of the Personnel Board's published rules permitting unpaid suspensions of exempt employees for violations of state or federal law (Def.'s Tr. Ex. #6, Section 13), and the Department of Labor's express intent that the workplace conduct exception apply to infractions of this nature. 29 C.F.R. § 541.602(b)(5); 69 Fed. Reg. at 22177 (explaining that the term "workplace conduct" refers to "serious workplace misconduct like . . . violations of state and federal laws). Thus, these suspensions fall easily within the workplace conduct exception to the general no-deduction of pay rule for exempt employees. 29 C.F.R. § 541.602(b)(5).

## IV. CONCLUSION

Having reviewed and applied the relevant law to the facts of this case, the Court concludes that the City's disciplinary suspensions imposed on twelve of the Plaintiffs in this

case were permissible as a matter of law and do not destroy the salaried status of Plaintiffs or disrupt the jury's verdict in favor of the City.  A final judgment in this case is forthcoming.

DONE this the 19th day of March, 2013.

/s/ Mark E. Fuller  
UNITED STATES DISTRICT JUDGE